UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TARA L. CRIDER, )
 )
    *Plaintiff* )
 )
v. ) No. 2:10-cv-383-JAW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    *Defendant* )

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the administrative law judge failed to assess her mental impairments properly, should have found that her impairments met or equaled the criteria of a listed impairment, and should have given controlling weight to the opinions of two treating sources. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from a combination of anxiety, depression, and a learning disability with average intellectual functioning, impairments that were severe but which, considered separately or together, did not

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me by telephone on September 13, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 9-10; that the plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but could only tolerate brief and superficial contact with the general public, needed to avoid crowded or public areas of 50 or more individuals for more than one hour at a time, and could understand, remember, and carry out 1 to 6 step basic instructions through a normal workday with normal breaks on a consistent schedule, Finding 4, *id.* at 11; that she was unable to perform any past relevant work, Finding 5, *id.* at 17; that, given her age (a younger individual on the date the application was filed), education through the eighth grade and limited reading and writing skills, work experience, and RFC, use of the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision making led to the conclusion that there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 17-18; and that she, therefore, had not been under a disability, as that term is defined in the Social Security Act, from the date the application was filed, June 16, 2008, through the date of the decision, Finding 10, *id.* at 19. The Decision Review Board did not complete its review of the decision in the time allowed, *id.* at 1, making it the final determination of the commissioner. 20 C.F.R.§ 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to

support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The appeal also implicates Step 2. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2

The plaintiff asserts that the administrative law judge failed to use the special technique required by 20 C.F.R. § 416.920a to assess her mental impairments. [Itemized Statement] (Docket No. 12), at [4], [12]-[15]. She contends that, if the special psychiatric technique had been properly used, the administrative law judge would have been required to find that her

mental impairment met or equaled Listing 12.06 or Listing 12.04. *Id*. at [4], [15]-[16]. These Listings are for anxiety-related disorders and affective disorders, respectively.

The regulation cited by the plaintiff requires only that the special technique be used at each stage of the review of the plaintiff's claim. It does not require the administrative law judge to account for all of the psychiatric evidence or to see that evidence in the light most favorable to the claimant. The plaintiff takes issue with the conclusions reached by the administrative law judge after she applied the technique, and attacks the forms filled out pursuant to the regulations at earlier levels of review as "incomplete and inadequate." *Id*. at [12]-[13], [14]. But, these perceived deficiencies do not demonstrate that the special technique was not used. In a single sentence at the end of this section of her itemized statement, the plaintiff asserts that "the ALJ's application of the special technique requirements is materially flawed." *Id*. at [15]. That is a statement of an issue distinct from the question of whether the administrative law judge "neglected to employ" the technique at all, which is the issue as stated at least twice in the body of the itemized statement.

The record demonstrates that the technique was used as required, 20 C.F.R. § 416.920a(e), by completion of forms at the initial and reconsideration levels, Record at 365-78, 486-99, and in the administrative law judge's opinion, *id*. at 10-11. That is all that is required by the regulation.

If the plaintiff's brief statement of a different issue involving the technique being "materially flawed" is sufficient to raise the issue, *but see Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *4 n.3 (D. Me. July 7, 2011), it also fails. The plaintiff's attack on the forms as completed by the state agency reviewers, Itemized Statement at [14]-[15], establishes at most a harmless error, as the administrative law judge expressly rejected those

reviewers' conclusions. Record at 9. With respect to the administrative law judge's evaluation, *id.* at 10-17, the evidence she cites supports her conclusions. *E.g.*, *id*. at 210-12, 216, 589. There is other evidence that could be interpreted to the contrary, as the plaintiff points out, Itemized Statement at [12]-[14], but resolution of such conflicts is the role of the administrative law judge. *Edwards v. Barnhart*, No. 03-260-P-S, 2004 WL 1529288, at *3 (D. Me. June 24, 2004).

The administrative law judge concluded that the plaintiff had not demonstrated that her mental impairments satisfied the criteria of either Listing on which she now relies. Specifically, she found that the "B" criteria of the Listings at issue were not met. *Id*. at 10-11. Assuming that the "A" criteria of each Listing are met, the "B" criteria in each case require at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

Listing 12.04(B), 12.06(B). The plaintiff does not contend that the evidence establishes the "C" criteria of either Listing, an alternate way to meet either Listing. Nor does she attempt to specify which two of the listed "B" criteria are met and what undisputed evidence supports each of them.

This limited effort will not support a remand. To the extent that the plaintiff meant her discussion of the special technique to apply to this claim as well, it also fails. The regulation requires that the administrative law judge "document application of the technique in the decision." 20 C.F.R.§ 416.920a(e). The administrative law judge in this case did so, discussing each of the first three required functional areas: activities of daily living, social functioning, and concentration, persistence, or pace. 20 C.F.R.§ 416.920a(c); Record at 10-11. She also

5

discussed the fourth functional area, episodes of decompensation.[2] 20 C.F.R.§ 416.920a(c); Record at 11.

## B. Treating Source Opinions

The plaintiff asserts that the administrative law judge erred in failing to give controlling weight to the opinion of Dr. Thomas Johnson and "significant weight" to the opinion of Tracey Audet, LCSW. Itemized Statement at [16]-[20].

Medical opinions are entitled to consideration based on six enumerated factors: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. *Id*. § 416.927(d)(2)-(6). A medical opinion by a treating source is given "controlling weight" when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. *See id*. § 416.927(d)(2); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-2p"), at 111.

When such an opinion is not given controlling weight, it is nonetheless evaluated pursuant to the factors enumerated in section 416.927(d)(2)-(6). *See id*. § 416.927(d)(2). The

---

[2] To the extent that the plaintiff means to rely on the opinion of Tracy Audet, LCSW, who checked "Three" with regard to "Repeated episodes of decompensation within a 12 month period, each of at least two weeks duration" on a form entitled "Mental Impairment Questionnaire" that was signed on January 5, 2010, Record at 644, 649, 650, despite the partial definitions given on the form, Ms. Audet does not demonstrate that the definitions have been met. She wrote a note after the following instruction: "If within one year your patient had more than three episodes of decompensation of shorter duration than two weeks or less frequent episodes of decompensation of longer duration than two weeks, please give the dates of each episode of decompensation[.]" *Id*. at 649. The note says, in its entirety: "These incidents relate to DHHS becoming involved after a domestic incident and her recent eviction notice and having to live @ the AWAP Shelter[.]" *Id*. In addition to the fact that no dates are given, the events described are stressors that could happen to anyone, without the presence of a mental impairment. In the absence of any evidence that it was the plaintiff's mental impairment that caused these incidents, and how long each lasted, the regulatory standard is not met. *See* Listing 12.00(A)(4).

6

fact that a medical opinion is not entitled to controlling weight does not mean that it should be rejected. *See* SSR 96-2p at 114. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." *Id*. The commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2).

The determining factor here is that Dr. Thomas Johnson was not a treating medical source. He saw the plaintiff on two separate days "for a comprehensive psychological evaluation." Record at 518. A "treating source" is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. The report of a psychologist or other medical professional who is not a treating source may never be given controlling weight. Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) at 112. The administrative law judge gave sufficient reasons for her rejection of Dr. Johnson's conclusions. Record at 16.

The plaintiff wisely does not contend that the opinions of Tracy Audet, LCSW, a counselor who was treating her, are entitled to controlling weight, because Audet is not an "acceptable medical source." 20 C.F.R.§ 416.913(a). Contrary to the plaintiff's assertion, Itemized Statement at [19], the administrative law judge did give "supportable reasons for rejecting . . . Trac[]y Audet's opinions as to [the plaintiff's] ability to function in the workplace for the time period the doctor [sic] had evaluated." *See* Record at 11, 13, 17. The administrative law judge correctly notes that Audet is not qualified, under Social Security law, to diagnose a mental impairment. *Id*. at 17. She also notes that "the majority of her January 2010 opinion

greatly exceeds any reasonable objective clinical findings or observations reported in her treatment records (Exhibit 26F)." *Id*. That is sufficient. While some of Audet's findings may be consistent with some other opinions in the record, they must be consistent with all of the qualified opinions in the record in order to support remand, and the plaintiff has not met that standard.

### C. Record Support for Assigned RFC

The plaintiff lists what she characterizes as the administrative law judge's "findings to support her determination of the [p]laintiff's RFC[,]" *id*. at [5]-[7], and then attempts to refute them, *id*. at [7]-[12]. There are two problems with this approach: (1) the plaintiff does not list all of the administrative law judge's findings, and (2) the fact that some evidence in the record does not support some of those findings does not render them invalid, so long as there is also evidence in the record that supports them. In addition, the plaintiff improperly characterizes some of the findings she lists as insufficient "standing alone" to support the RFC assigned to her by the administrative law judge. *E.g.,* Itemized Statement at [7], [11]. But here, the administrative law judge considered the effects of all of her findings, collectively, in reaching her RFC decision. In the first of the two cases cited by the plaintiff in support of her argument, *Delafontaine v. Astrue*, Civil No. 1:10-cv-027-JL, 2011 WL 53084, at *11 (D.N.H. Jan. 7, 2011), this was precisely the point. Nor can it reasonably be said that the administrative law judge in this case required the plaintiff to "prove that her pain precludes all productive activity and confines her to life in front of the television," which the plaintiff posits as the holding of the other cited case, *Blake v. Apfel,* No. 99-126-B, 2000 WL 1466128, at *8 (D. N. H. Jan. 28, 2000). Itemized Statement at [7].

I will not address each of the findings and alleged refutations on the plaintiff's list. The following three are typical.

*1. First Finding*

The plaintiff sets forth the following as one of the administrative law judge's findings:

> She entertained 15 guests for Christmas dinner in her apartment, cooked a ham, and people ate sitting [in] her bedroom and she managed fine. To prepare for this dinner, she needed [to] do a significant amount of work arranging and organizing the dinner, cooking and serving a meal for 15 people, and was able to plan, multitask, maintain concentration and later adapt to changes during this dinner.

Itemized Statement at [7]-[8].

The administrative law judge actually wrote the following:

> However, despite her irritability and the stress of the holidays, the claimant indicated that she entertained 15 guests for Christmas dinner in her apartment and as noted in her counseling notes, the event went well (Exhibit 24F, p.1). She testified that she cooked a ham and that her family brought other dishes. She indicated that she originally invited 12 people, but 3 more showed up raising some concern for her. However, she said that she adapted and they had a really nice time. The biggest problem, she noted, was that she only had 4 chairs, but everyone took it in stride and they ate sitting on her bed and managed fine. The claimant's testimony indicates that this Christmas dinner required a significant amount of work arranging and organizing the dinner, shopping, cooking, and serving a meal for 15 people; however, she also indicated that it was a good time. The claimant's ability to plan, organize, multitask, maintain concentration, and later adapt to changes during Christmas dinner at her apartment, as well as her testimony as to her ability to tolerate brief and superficial contact with the public further support . . . a finding of only mild limitations in concentration, persistence and pace, as well as mild-to-moderate limitations in social functioning, and further support the residual functional capacity.

Record at 13-14.

The plaintiff asserts that

> [t]he hearing testimony contradicts this finding. The Plaintiff testified that she can't say she ["]entertained [the 15 people] at Christmas dinner." (Tr at 50). She cooked a ham. "But her mom was there. She helped with the potatoes and the squash . . . . my mom did the rest. And like I had my mom's hands and my niece's hands." (Tr. at 50). There was absolutely no testimony, and there is no evidence, that the Plaintiff "would need to do a significant amount of work arranging and

9

organizing the dinner." The ALJ made that up. She did not "cook the meal["] (her mom cooked most of it, and she had her mom's and niece's hands and help) and there was no testimony or evidence that the Plaintiff "serve[d] 15 people." Again the ALJ made up this "fact[."]

Itemized Statement at [8].

The plaintiff's allegation that the administrative law judge "made up" facts is incorrect and inappropriate. The administrative law judge drew reasonable inferences from the record and the plaintiff's testimony. That is the role of any judge or finder of facts. The administrative law judge did not say that the plaintiff "serve[d] 15 people"; she said that the plaintiff served a meal for 15 people and entertained 15 guests for Christmas dinner. In addition, the fact that the plaintiff's mother and niece assisted her is unremarkable; most individuals who host holiday dinners welcome food prepared by others and assistance in the preparation and serving of the meal. As the administrative law judge stated, the fact that the plaintiff "entertain[ed] 15 guests for Christmas" is also noted in her counseling records. Record at 618.

*2. Second Finding*

Another finding by the administrative law judge is described by the plaintiff as follows: "She cares for her younger and older sons who were 3 and 8 at the beginning of the adjudication process." Itemized Statement at [8]. The administrative law judge said the following about the plaintiff and her sons:

> The claimant reported that a typical day for her begins with waking up, getting her son off to day camp, going back to sleep, waking a second time, and making breakfast for her younger son (Exhibit 6E, p.1). . . . The evidence of record indicates that she is able to care for her 2 young children, one of whom requires special attention, attend to her personal care, prepare meals by reading cooking directions, clean her home, and shop either with a friend or alone (Exhibit 6E, pp. 1-2; Hearing Testimony).
> 
> \* \* \*
* * *

10

> The claimant cares for two children, one of whom has been diagnosed with attention-deficit hyperactivity disorder and requires special attention (Exhibit 6E and Hearing Testimony).
>
> * * *
>
> [S]he continues to . . . get[] her sons ready for school (Exhibit[] 20F, pp. 15-17. . .).
>
> * * *
>
> The claimant testified that in warmer weather she goes to the park with her sons, and if crowded, she watches them by sitting off to the side, and if less crowded, she will play with them.
>
> * * *
>
> Ms. Robichaud, a friend of the claimant, testified that her son rides the school bus with the claimant's son, and gets off at the claimant's house, where she picks him up around 5:30 p.m.
>
> * * *
>
> Ms. Robichaud further testified that the claimant's 5 year old son gets home between 3:00 p.m. and 3:30 p.m. and that claimant is already watching him when she arrives around 5:00 p.m.
>
> * * *
>
> In addition, the evidence of record indicates that the claimant cared for her younger son, who was three years old at the beginning of the adjudication period, as well as her older son who was 8 years old. She testified that her older son has attention-deficit hyperactivity disorder and requires more assistance. For example, she indicated that [she] must carefully consider what activities she will allow him to participate in and does not allow him a lot of freedom after school because he needs time to wind down after dinner.

Record at 10, 13, 14.

The plaintiff's refutation is the following:

> The evidence is that she was with her ex-husband, the father of her 3 year old son, when her sons were 3 and 8 and he provided much of their care. (Tr. at 38). Further, the evidence is that her ex-husband comes over to her apartment every other day and helps with chores, grocery shopping, clean[ing] his son's room, and help[ing] with "the house stuff[.]"

Itemized Statement at [9]. The second sentence of this paragraph does not respond to the finding as the plaintiff has stated it. The first sentence addresses the finding as the plaintiff has stated it, but does not refute any of the specific findings of the administrative law judge set forth above. Furthermore, the citation given does not support the portion of the first sentence of this

11

paragraph that states "he provided much of their care." Record at 63 (page 38 of the transcript of the hearing).

### 3. *Third Finding*

The plaintiff sets out the following as a finding made by the administrative law judge: "She was able to take adult education classes in pursuit of her GED, passed her driver's license examination with no special accommodations, and she can read road signs. (Tr. [a]t 16)." Itemized Statement at [10].

The administrative law judge said the following:

> However, despite a diagnosis of a learning disorder, the claimant testified to attending adult education classes in pursuit of her GED. She testified that, although she passed the math section, *she did not take the language portion of the examination.* The evidence of record indicates that she has difficulty with reading decoding skills, requires extra time for written expression, and has some difficulties with short-term memory (Exhibits 11E and 19F). However, despite these difficulties, her current level of functioning supports the residual functional capacity defined above. She attended adult education classes, she worked on her skills, she passed her driver's license examination with no reported special accommodation, and she can read road signs.

Record at 16 (emphasis in original).

The plaintiff disputes this finding as follows:

> The evidence is that because she was in special education, she was allowed to go to school in South Portland until she was 21. (Tr. at 57). She continued to qualify for special education because she is a student with learning disabilities. (Tr. at 164). She tried to obtain her GED but was not successful because she was unable to pass the test to get her GED. (Tr. at 57). There is no evidence that she passed any of her adult education classes, other than the fact that there was a period of time when she was benefitting from one on one reading assistance. (Tr. at 162, 163).

Itemized Statement at [10].

The first two sentences of this paragraph do not respond to anything in the administrative law judge's finding. The remaining sentences address the finding, although not directly, but they do not establish that anything in the administrative law judge's finding is incorrect. The third sentence is incorrect. The plaintiff testified that she never took the reading and writing portion of the GED; she took a pre-test and "wasn't ready to actually do the test on any of them every time I took them." Record at 59. The administrative law judge's finding is supported by the citations given to the record.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 26th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge